In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-13-00251-CV

KOUNTZE INDEPENDENT SCHOOL DISTRICT, Appellant

V.

COTI MATTHEWS, ON BEHALF OF HER MINOR CHILD MACY
MATTHEWS, ET AL., Appellees

On Appeal from the 356th District Court
Hardin County, Texas
Trial Cause No. 53526

## MEMORANDUM OPINION

This is an accelerated appeal from the trial court's denial of Kountze Independent School District's ("Kountze ISD") plea to the jurisdiction. Appellees, parents of certain cheerleaders from Kountze High School ("Parents"), brought suit against Kountze ISD and its former superintendent, Kevin Weldon, after Weldon issued a decree that prohibited the cheerleaders from including religiously-themed messages on the run-through banners used at the beginning of school football games. After a combined hearing on multiple motions, including Kountze ISD's

plea to the jurisdiction, Kountze ISD's motion for summary judgment on its request for declaratory relief, and Parents' motion for partial summary judgment, the trial court issued its summary judgment order on May 8, 2013. In the order, the trial court denied Kountze ISD's plea to the jurisdiction and granted, in part, Parents' motion for partial summary judgment.[1]

Kountze ISD appealed the trial court's denial of its plea to the jurisdiction. Appellate courts have authority to review interlocutory orders only when authorized by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). Section 51.014 of the Civil Practice and Remedies Code allows an appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001[.]" Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2013). Kountze ISD is a governmental unit under section 101.001. *See id.* § 101.001(3)(B). Therefore, we have jurisdiction to consider this interlocutory appeal. *See id.* § 51.014(a)(8).

Kountze ISD asserts the trial court erred when it denied its plea to the jurisdiction because Parents' claims are moot and the trial court, therefore, lacked subject matter jurisdiction over Parents' claims. After review, we agree that

---

[1] The trial court also granted, in part, Kountze ISD's motion for summary judgment on its request for declaratory relief. Kountze ISD's request for declaratory relief is not a claim against Parents and the grant of summary judgment to Kountze ISD on the declaratory relief claim is not challenged on appeal by any party.

Parents' constitutional claims and statutory claims under chapters 106 and 110 of the Texas Civil Practice and Remedies Code have been rendered moot. We reverse the trial court's order in part and render judgment that Kountze ISD's plea to the jurisdiction is granted as to these claims. We, therefore, vacate the October 18, 2012 temporary injunction. As to Parents' claims for attorney's fees under the Declaratory Judgment Act, we affirm that portion of the trial court's order denying Kountze ISD's plea to the jurisdiction and remand this case to the trial court to determine whether the parties are entitled to attorney's fees.

## I. Factual Background

For a number of years, the Kountze High School Cheerleading Squad has prepared run-through banners for display and use at Kountze High School varsity football games.[2] The cheerleading squad generally holds a banner up for the football team to charge through as the players enter the field before each game. The run-through banners are usually displayed for only a short time before the players run through and destroy the banners. Though the messages have varied throughout the years, the run-through banners generally display a brief message intended to encourage the athletes and fans. The cheerleading squad decides the content of the banners and creates the banners before each game. The cheerleading

---

[2] There is also some evidence to support that the Kountze Junior High School Cheerleading Squad prepares run-though banners for display and use at football games.

3

squad's sponsors have traditionally reviewed and approved the content of the run-through banners to insure that the banners are appropriate for the event and do not demonstrate poor sportsmanship.

Prior to the start of the 2012 football season, the cheerleading squad decided to include references and quotes from the Bible on the banners as a way to provide a positive message of encouragement to athletes and fans. At the beginning of the 2012 football season, the cheerleading squad implemented this plan and began using run-through banners that included religiously-themed content.

On September 17, 2012, Superintendent Weldon received a letter from a staff attorney with the Freedom from Religion Foundation (FFRF)[3]. The FFRF attorney urged Weldon to take immediate action to prevent the use of run-through banners containing religious messages. She informed Weldon that the content of the banners must remain secular; otherwise, she contended the school district is in violation of the Establishment Clause. After receiving the letter and seeking legal

---

[3] The Freedom from Religion Foundation is an advocacy group, which claims to be the "nation's largest association of freethinkers (atheists, agnostics and skeptics)[.]" *See* Freedom From Religion Foundation, http://ffrf.org. Its worldview is that "most social and moral progress has been brought about by persons free from religion." *See* http://ffrf.org/about. FFRF identifies itself as a "watchdog organization" and appears to regularly send letters to federal, state, and local government officials objecting to activities that they believe violate the Establishment Clause. *See* http://ffrf.org/legal (identifying self as watchdog organization); https://ffrf.org/publications/freethought-today/item/18923-ffrf-state-church-complaints-make-headlines (reporting a number of letters and complaints made by FFRF).

4

advice, Weldon determined to restrict the use of religiously-themed messages on the run-through banners. On September 18, 2012, Weldon notified the campus principals that the run-through banners could no longer include religiously-themed messages and asked campus principals to convey this message to their staff and sponsors of student groups. Later that same day, a high school administrator made an announcement over the school's intercom system relaying Weldon's new policy. Weldon made this determination without having presented the issue to the Kountze ISD Board of Trustees.

On September 20, 2012, Parents filed an original petition, an application for a temporary restraining order, and a request for injunctive relief. On October 18, 2012, after a hearing, the trial court granted Parents' request for a temporary injunction, which prohibited Kountze ISD, Weldon, and others associated with Kountze ISD, from preventing members of the Kountze Cheerleading Squad from displaying run-through banners "containing expressions of a religious viewpoint at sporting events."

Parents have alleged a number of causes of action against Kountze ISD.[4] Parents allege that Weldon's new policy is an unconstitutional restriction of the cheerleaders' speech, denies the cheerleaders' free exercise of religion, and denies them equal protection under the law. Parents sought injunctive relief and

---

[4] Parents have since dismissed all claims against Weldon.

declaratory relief.[5] Each claim stems from Weldon's creation of a new policy—prohibiting religious messages or symbols on run-through banners—and the school administrators' subsequent enforcement of that policy. Parents also sought attorney's fees under chapters 37, 106, and 110 of the Texas Civil Practice and Remedies Code.

Kountze ISD filed a plea to the jurisdiction, as well as a motion for summary judgment regarding its request for declaratory relief. Parents filed a motion for partial summary judgment. The trial court denied the plea to the jurisdiction and granted, in part, both summary judgment motions.

---

[5] In Parents' Fifth Amended Petition, they also appear to seek recovery of actual and nominal damages under the Texas Religious Freedom Restoration Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.005 (West 2011). However, during their depositions, Parents consistently denied that they were seeking any monetary award in this litigation. Parents' counsel informed the trial court that they were not seeking compensatory damages, but only nominal damages in the form of a dollar to memorialize that KISD committed a violation under the Act. The Act provides that a party who successfully asserts a claim under the Act is entitled to recover "compensatory damages for pecuniary and nonpecuniary losses[.]" *Id*. § 110.005(a)(3). Even if Parents had consistently sought compensatory damages as permitted under the Act, Parents cannot maintain a claim for damages. In their petition, Parents concede that they failed to provide the 60-day notice required under the Act. *See id*. § 110.006(a). Parents allege that they were not required to provide written notice because KISD's policy would "cause imminent harm to Plaintiffs and there was not inadequate time to provide notice." Assuming Parents' allegations are true and that their claims fall within the statutory exception to the 60-day notice requirement, Parents' cannot rely on this exception to support their claims for damages under the Act because the exception only applies to claims for declaratory and injunctive relief. *See id*. § 110.006(a), (b).

6

## II. Standard of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction over the claims that a plaintiff has asserted in the lawsuit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the trial court's order on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). In our de novo review, we do not weigh the merits of the plaintiff's claims, but we consider the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff bears the burden in a lawsuit to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "[W]e construe the pleadings in the plaintiff's favor and look to the pleader's intent." *Brown*, 80 S.W.3d at 555. If the plea to the jurisdiction challenges the existence of jurisdictional facts, we will consider only the evidence relevant to the resolution of the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227.

## III. Plea to the Jurisdiction

On appeal, Kountze ISD argues that Parents' underlying constitutional and statutory claims against Kountze ISD have been rendered moot in light of the school's change in policy.

## A. The Mootness Doctrine

Mootness deprives a court of subject-matter jurisdiction. *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100-01 (Tex. 2006). Subject matter jurisdiction is essential to a trial court's authority to decide a case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Appellate courts are likewise prohibited from deciding moot controversies. *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). The mootness prohibition is rooted in the separation of powers doctrine in the United States and Texas Constitutions, both of which prohibit courts from rendering advisory opinions. *See* U.S. CONST. art. III, § 2, cl. 1; Tex. Const. art. II, § 1; *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam); *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

"A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). A justiciable controversy exists when there is "a real and substantial controversy involving [a] genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). We will find that a controversy is moot when an allegedly wrongful behavior has passed and could not be expected to recur. *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.). The actual controversy must persist throughout all stages of litigation.

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).

In a declaratory judgment action, the standard for determining whether a defendant's voluntary conduct has mooted a case is stringent—the defendant must show it is "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Bexar Metro. Water Dist.*, 234 S.W.3d at 131 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The United States Supreme Court has explained that defendants bear this heavy burden to establish mootness after voluntary cessation "because otherwise they would simply be free to 'return to [their] old ways' after the threat of a lawsuit had passed. . . . Thus they must establish that 'there is no reasonable likelihood that the wrong will be repeated.'" *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 633 (1953)).

## B. No Live Controversy Remains

Parents brought this suit so their children could continue to display religiously-themed messages on run-through banners at school football games. Kountze ISD argues the case has become moot during the pendency of this litigation because it has adopted a new policy that allows student cheerleaders to display religious content on the run-through banners. The evidence shows that, in

response to this litigation, on October 16, 2012, Kountze ISD initiated legislative proceedings in the community to gather evidence and consider the controversy presented by Weldon's new policy regarding the run-through banners. On April 8, 2013, the Kountze ISD Board of Trustees adopted Resolution and Order No. 3, which states, in part,

> Based on the evidence, including oral and written testimony, submitted to the Board, the Board concludes that school personnel are not required to prohibit messages on school banners, including run-through banners, that display fleeting expressions of community sentiment solely because the source or origin of such messages is religious.

The Resolution also instructed the superintendent "to distribute a copy of this resolution and order to all campus principals and to instruct all campus principals to distribute [the new policy] to the athletic director, the coaches of the various sports teams, and the Cheerleader Squad sponsors."

Not only has Kountze ISD formally adopted a new policy since the initiation of the underlying lawsuit, it has made judicial admissions in the pending litigation to affirm its new policy and its future intentions regarding religious content on the run-through banners. We regard assertions of fact in a party's live pleadings that are not pleaded in the alternative, as formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (quoting *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). For a statement in a pleading to be a judicial admission, it must be clear, deliberate, and

10

unequivocal. *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146

S.W.3d 79, 95 (Tex. 2004). In its answer, Kountze ISD states,

> Kountze ISD does not intend to prohibit messages from being placed
> on the banners merely because the content of the messages is religious
> or is from a religious source. Kountze ISD does not intend, for
> example, to prohibit a banner from containing a quotation from the
> Bible or citation to the Bible merely because the quotation or citation
> is from the Bible. While it is possible that there could be quotations
> from the Bible that would not be appropriate for a run-through banner
> at a sporting event, no quotation from the Bible should be rejected
> merely because it comes from the Bible.[6]

In Kountze ISD's response to Parents' motion for partial summary judgment, it

states,

> Kountze ISD does not have and does not plan to have any ban
> on the inclusion of religious messages on "run-through" banners at

---

[6] In its Resolution and Order No. 3, Kountze ISD gives an example of when a Biblical quote would not be allowed on the run-through banners. It explains,

> For instance, the Board has been made aware of recent news reports
> indicating that students at a public school in Louisiana displayed, at a
> basketball championship game against a private school named
> Parkview Baptist, banners that stated, "Jesus [loves] you . . . unless
> you attend Parkview Baptist." The Board agrees with the position
> taken by the High School Cheerleader Squad Sponsors in their
> depositions in the Lawsuit that such a banner would constitute poor
> sportsmanship and should not be permitted to be displayed by the
> Kountze ISD Cheerleader Squad, regardless of its arguably religious
> content.

In their depositions, appellees, Moffett and Richardson, agreed that using religious content on banners in this manner is inappropriate and demonstrated poor sportsmanship. They both indicated that as the cheerleading sponsors, they would have restricted the cheerleaders from using a message like that used in the description above.

Kountze ISD sporting events. Moreover, Kountze ISD does not and does not plan to prevent the Cheerleader Squad from using religious messages on "run-through" banners at Kountze ISD sporting events.

During the hearing on the plea to the jurisdiction, Kountze ISD's counsel argued to the trial court:

> We think this case is moot. We think that there is no case or controversy now because there is no prospect anyone in the school district is going to try to stop somebody from putting scriptures on banners -- quotations on banners. But we haven't -- the way our approach is if you grant the Plea to the Jurisdiction, then the scripture quotations can be put on the banners and there won't be anyone trying to stop that.

In its brief to this Court, Kountze ISD states, "The school district intends to permit religious-themed banners on the same terms as they were allowed prior to the FFRF Letter."

The Texas Supreme Court has acknowledged that where a plaintiff challenges a statute or written policy, the challenges may become moot if the statute or policy is repealed or fundamentally altered. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 167 (Tex. 2012) (citing *Trulock v. City of Duncanville*, 277 S.W.3d 920, 925-27 (Tex. App.—Dallas 2009, no pet.). In *Heckman*, a group of named plaintiffs sued on behalf of themselves and a putative class of persons who were allegedly denied constitutional rights in criminal misdemeanor pretrial matters. *Id*. at 144. The plaintiffs sued the county and five of its judges, alleging it was the defendants' custom and practice to systematically and deliberately deprive

12

indigent misdemeanor defendants of their constitutional rights to counsel, self-representation, and open courts. *Id*. at 144, 165, 167. The defendants challenged the trial court's jurisdiction. *Id*. at 145. The court of appeals held the plaintiffs' claims were moot and dismissed the suit for want of jurisdiction. *Id*. at 145. On appeal, the Supreme Court found the court of appeals erred in dismissing the lawsuit based on standing. *Id*. at 150. In regards to the claims of the putative class, the defendants argued that the claims of the entire putative class were moot in light of the changes the county made to its counsel-appointment policies, which the defendants claimed remedied all of the claims of the putative class. *Id*. at 161, 166. The defendants pointed to intervening events that they argued mooted the putative class's claims, including the county's subsequent adoption of a new policy for appointing counsel to indigent criminal defendants in the county, the State's newly enacted statute changing the requirements for appointment counsel to indigent defendants, and new federal court opinions that changed the law governing indigent defense. *Id*. at 166. The Court acknowledged that challenges to a statute or written policy may become moot if the statute or policy is repealed or fundamentally altered. *Id*. at 167. However, revisions of a written policy do not moot a case when the focus of the plaintiffs' complaint was not the defendants' written policies, but rather their custom and practice of systematically and deliberately depriving indigent misdemeanor defendants of their constitutional

13

rights. *Id.* at 167. The Court noted that the plaintiffs' allegations did not hinge on the constitutionality of the county's policies. *Id.* The Court explained, "Indeed, plaintiffs might argue that defendants violated their constitutional rights *in spite of* the then-existing policy. Thus, the existence of new written policies may have no practical effect on how defendants actually treat individuals who appear in Williamson County's courtrooms." *Id.*

*Heckman* is distinguishable from this case. Here, the focus of Parents' complaint is the superintendent's new policy that banned all religiously-themed messages on run-through banners at school football games. KISD repealed the complained of policy and replaced it with a written policy that addresses Parents' complaint. While Parents allege there is a "long tradition of the cheerleading squads producing the run-through banners," there is not a specific allegation that prior to the superintendent's ban, KISD attempted to restrict the banners in this manner. Parents do not plead any specific facts to support that KISD had a custom or practice of banning religiously-themed run-through banners.

In *Trulock v. City of Duncanville*, the defendant, a municipality, issued a plaintiff a number of citations pursuant to a city ordinance. 277 S.W.3d at 922. The plaintiff challenged the ordinance as unconstitutional. *Id.* The trial court dismissed the plaintiff's claims for want of jurisdiction. *Id.* at 922-23. The defendant argued on appeal that the plaintiff's challenge to the city's ordinance became moot when

14

the city subsequently repealed, amended, and modified the complained-of ordinance. *Id*. at 921, 925. After examining the complained-of ordinance, and the ordinance the city later adopted, the court determined the changes in the ordinance significantly altered the original city ordinance. *Id*. at 926-27. In fact, the new ordinance modified the portions of the old ordinance that the plaintiff had complained were unconstitutional. *Id*. at 927. Ultimately, the court concluded the city's adoption of the new ordinance rendered the plaintiff's claims moot. *Id*. at 928. Like *Trulock*, KISD's adoption of Resolution and Order No. 3 specifically addressed Parents' central complaint—the superintendent's policy, which required school personnel to prohibit all religiously-themed messages on run-through banners. KISD's new policy specifically provides that "school personnel are not required to prohibit messages on school banners[.]"

In *Del Valle Independent School District v. Lopez*, the Austin Court of Appeals held a challenge to the constitutionality of a district's at-large electoral system was not moot even though the district voluntarily abandoned the at-large system because the board could reimplement the challenged system at any time and had not admitted to the system's unconstitutionality. 863 S.W.2d 507, 511 (Tex. App.—Austin 1993, writ denied). Unlike *Del Valle Indep. Sch. Dist.*, here, Kountze ISD has not simply abandoned a challenged policy. Kountze has replaced Weldon's policy regarding the run-through banners with a new policy that allows

15

the student cheerleaders to do what they sought to do in the first place—to display messages of encouragement and school spirit that may incorporate religious content. Moreover, in this case, we have a number of judicial admissions where Kountze ISD has stated that it does not intend to reinstate Weldon's ban on the run-through banners.

In *Robinson v. Alief Independent School District*, the Houston Court of Appeals considered whether a voluntary action mooted a case. 298 S.W.3d 321, 323 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). In *Robinson*, a former teacher sought to enjoin the school to expunge his employee file. *Id.* The school filed a plea to the jurisdiction and argued that the teacher's injunctive claims were moot because the school, *sua sponte*, had agreed to expunge the teacher's personnel file as requested. *Id.* The teacher argued that the school's unilateral decision to expunge his employee file was not enough to moot his claim for injunctive relief without the school also having made a judicial admission of wrongdoing or receiving an extrajudicial action preventing the school from reversing its decision in the future. *Id.* at 325. The court held that the teacher's request for injunctive relief was moot. *Id.* at 327. The court explained that the teacher requested that his employee file be expunged, and the school fully agreed to comply with his request. *Id.* at 326. The court rejected the teacher's argument that he needed an injunction to prevent the school from reinstating the complained

16

of material in his file at some point in the future. *Id.* at 326-27. The court explained that "[w]ithout any evidence of an existing or continuing present injury, or a reasonable expectation that [the school] will reinstate the expunged documents in his employee file, [the teacher's] request is merely [conjectural] and hypothetical," and, thus, "any judicial action would be advisory." *Id.*

Additionally, while we recognize that the unpublished case of *Fowler v. Bryan Independent School District* has no precedential value, we find the reasoning and analysis of the appellate opinion persuasive. *See* No. 01-97-01001-CV, 1998 WL 350488 (Tex. App.—Houston [1st Dist.] July 2, 1998, no pet.) (not designated for publication). In *Fowler*, students brought suit against a school for peer hostile environment sexual harassment. *Id.* at *1. The school argued that the students' claims were moot because the school had subsequently adopted sexual harassment policies and training. *Id.* at *4. The trial court rendered summary judgment in favor of the school. *Id.* The students responded with evidence of incidents that occurred before the school's adoption of the new policy, and the only evidence they presented of circumstances after the new policy's adoption demonstrated that the new policy addressed the students' concerns. *Id.* at *4-5. The school had not simply abandoned its challenged policies and procedures, but it had replaced them with the types of procedures the students had sought. *Id.* at *6 n.17. Additionally, the school continued to function under this new policy for two

17

to four years after its implementation. *Id.* The court determined the alleged wrongful behavior had passed, was not likely to recur, and that the mootness exceptions did not apply; therefore, the court found the students' case moot. *Id.* at *6-7. The court found the case moot despite the fact that the school had not admitted its prior actions were unconstitutional. *Id.* at *6. The court explained that the school obviously recognized a problem existed as demonstrated by its adoption of a new policy. *Id.*

This case is similar to *Fowler*. In *Fowler*, the school adopted a new policy to address the concerns presented by the students. All of the evidence relied on by the students in *Fowler* concerned problems that existed before the school adopted a new policy. Here, there are no allegations and no evidence to support any claim that the school has prohibited or attempted to prohibit the cheerleaders' speech in any way other than through Weldon's ban, which has subsequently been repealed and replaced with a contrary policy. The school adopted this new policy in April 2013, and there is no evidence in the record to suggest that it has been altered since that time. Without evidence to the contrary, we assume that Kountze ISD's formally announced changes to its official school policy are not merely litigation posturing. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325-26 (5th Cir.

18

2009), *aff'd on other grounds*, 131 S. Ct. 1651 (2011).[7] We presume that Kountze ISD implemented its policy change in good faith to address Parents' complaints regarding Weldon's ban on the run-through banners. *See id.* We conclude that the adoption of Resolution and Order No. 3, along with Kountze ISD's judicial admissions throughout this lawsuit, are sufficient to satisfy its burden of showing it is absolutely clear that the complained of policy cannot reasonably be expected to recur.

In response to Kountze ISD's mootness argument, Parents argue that a controversy still exists because Kountze ISD disagrees with Parents as to the nature of the speech in question—whether it is governmental speech, student-

[7] After acknowledging the heavy burden a defendant must meet to establish mootness in voluntary cessation cases, the Fifth Circuit explained:

> On the other hand, courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity -- a practice that is reconcilable with *Laidlaw*. Although *Laidlaw* establishes that a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.

*Sossamon*, 560 F.3d at 325. Applying this reasoning, the Court concluded that an affidavit stating the policy had been changed satisfied the government's burden of making "'absolutely clear'" the condition created by the policy cannot "'reasonably be expected to recur[.]'" *Id.*

sponsored speech, or private speech. However, as discussed above, we have no authority to resolve a theoretical or contingent dispute. *See Beadle*, 907 S.W.2d at 467. With the adoption of Kountze ISD's new policy, there is no evidence that Kountze ISD has prohibited the speech of the students, such that we would be required to determine whether a violation of their free speech right has occurred. Parents cite to no evidence in their brief to this Court and we find no evidence in the record that under Kountze ISD's new policy, the cheerleaders' speech has been prohibited. We conclude the allegedly wrongful behavior has passed and cannot reasonably be expected to recur. We next consider whether any exceptions to the mootness doctrine prohibit its application to the facts in this case.

## C. No Applicable Exceptions to the Mootness Doctrine

While Parents do not assert an exception to the mootness doctrine, we will analyze whether an applicable exception exists. The Texas Supreme Court has recognized two exceptions to the mootness doctrine: "capable of repetition yet evading review[;]" and collateral consequences.[8] *F.D.I.C. v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994).

---

[8] The Texas Supreme Court has not recognized the public interest exception to the mootness doctrine. *See F.D.I.C.*, 886 S.W.2d at 767 (noting that the Court has not previously decided the viability of the public interest exception and finding it unnecessary to reach that issue under the facts of this case); *see also Jackson v. Blanchard*, No. 09-11-00273-CV; 2011 WL 4999537, at *1 (Tex. App.—Beaumont Oct. 20, 2011, pet. denied). "[T]he public interest exception permits judicial review of questions of considerable public importance if the nature of the

20

## 1. Capable of Repetition

The "capable of repetition yet evading review" exception applies when a party challenges an action that is of such a short duration that the party cannot obtain review before the issue becomes moot. *Tex. A&M Univ.—Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011). The party must show that there is a reasonable expectation that the same action will occur again if the court does not address the issue. *Id.* The ban challenged in this lawsuit is not an action of such short duration that it would evade review. The cheerleaders were junior high and high school students. Many of the students had a number of years before graduation within which they could seek redress for the alleged wrongful act.

Kountze ISD's new policy has been in effect since April 2013. While theoretically, the Board of Trustees for the school could repeal its new policy and reinstate Weldon's ban, we find that unlikely given the effort, time, and careful planning that went into the creation of the school's new policy. Any future policy regarding the cheerleaders' speech can be challenged at a later date. We are not empowered to decide cases on future contingencies or hypotheticals. *See City of Dallas v. Woodfield*, 305 S.W.3d 412, 419 (Tex. App.—Dallas 2010, no pet.) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("The mere physical or theoretical possibility that the same party may be subjected to the same action

_____

action makes it capable of repetition and yet prevents effective judicial review." *F.D.I.C.*, 886 S.W.2d at 767.

21

again is not sufficient to satisfy the test.")). There is no evidence in the record to explain how there is a "reasonable expectation" that the student cheerleaders would be subjected to enforcement of the former superintendent's ban. As explained above, the Board of Trustees has essentially repealed the ban and modified its policy in such a way to allow the religiously-themed messages on the banners. Accordingly, we conclude, there is no reasonable expectation that the student cheerleaders will suffer the same alleged wrong. While Kountze ISD has not conceded that the superintendent's ban was unconstitutional, it obviously recognized a problem existed and adopted a new policy to address that concern. We conclude the capable of repetition exception does not apply.

**2. Collateral Consequences**

Because the effects of a prejudicial event may not be resolved by the dismissal of a case as moot, the "collateral consequences" exception prevents dismissal when prejudicial events have occurred and the effects of those events continue to stigmatize helpless or hated individuals long after the judgment ceases to operate. *Gen. Land Office of State of Tex. v. Oxy U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990) (quoting *Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 19 (Tex. App.—Houston [1st Dist.] 1988, no writ)).

This exception is likewise not applicable in this case.[9] The cheerleaders have not suffered the type of prejudicial treatment envisioned by this exception. The cheerleaders never faced the consequences of Weldon's ban because of the trial court's restraining order and subsequent injunction that immediately went into place. No judgments or orders have been issued in this case that create a stigma or any kind of adverse consequences for the cheerleaders. This exception does not apply to the facts presented in this case.

## IV. Attorney's Fees

Next, we must determine whether Parents' claims for attorney's fees is moot. Parents have pleaded that they are entitled to recover attorney's fees under chapters 37, 106, and 110 of the Texas Civil Practice and Remedies Code. As we have found Parents' claims under chapters 106 and 110 moot, we conclude Parents' claims for attorney's fees under these chapters are moot as well. *See* Tex. Civ. Prac. & Rem. Code Ann. § 106.002(b) (West 2011) (stating that a court may

---

[9] The courts have generally applied this exception in cases related to short-term mental health commitment orders, juvenile delinquency adjudications, and custody orders. *See, e.g., State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980) (applying exception to mootness doctrine in a case involving involuntary commitment to a mental hospital); *Carrillo v. State*, 480 S.W.2d 612, 617 (Tex. 1972) (applying exception to mootness doctrine in case involving juvenile delinquency adjudication); *Ex parte Ullmann*, 616 S.W.2d 278, 280 (Tex. Civ. App.—San Antonio 1981, writ dism'd) (applying exception to protective custody order, because of stigma and adverse consequences flowing from such order); *Jones v. State*, 602 S.W.2d 132, 134 (Tex. Civ. App.—Fort Worth 1980, no writ) (applying exception to temporary involuntary commitment order, because of stigma of such order).

23

only award reasonable attorney's fees to the prevailing party); § 110.005(a)(4) (stating a court may only award reasonable attorney's fees to the party "who successfully asserts a claim or defense" under this chapter).

We have also found Parents' constitutional claims moot. However, unlike the chapters 106 and 110 claims for attorney's fees, with respect to chapter 37, the Declaratory Judgments Act, a separate controversy can persist even when the underlying controversy is moot. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005) (holding that a party's interest in obtaining attorney's fees "breathe[d] life" into an appeal of declaratory judgment where the underlying claims had become moot).

We conclude that the trial court must still determine if Parents are entitled to equitable and just attorney's fees as authorized by the Uniform Declaratory Judgments Act. The Uniform Declaratory Judgments Act authorizes an award of attorney's fees on an equitable basis. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). Under this Act, a party need not "substantially prevail" in the litigation to receive attorney's fees. *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex. 1996). A trial court may award just and equitable attorney's fees to a non-prevailing party. *Tex. A&M Univ.— Kingsville v. Lawson*, 127 S.W.3d 866, 874-75 (Tex. App.—Austin 2004, pet. denied).

Even though we hold Parents' underlying claims are moot, their claims for attorney's fees are a separate controversy that persists. *See Camarena*, 754 S.W.2d at 151; *Pate v. Edwards*, No. 12-13-00231-CV, 2014 WL 172509, at \*2-3 (Tex. App.—Tyler Jan. 15, 2014, no pet.). Parents obtained a ruling in their favor before their case was rendered moot. The trial court awarded Parents a temporary restraining order and a temporary injunction against Kountze ISD. Moreover, Kountze ISD has stated that Parents' lawsuit prompted it to change the school's policy. Because there is a question about whether Parents have a legally cognizable interest in recovering attorney's fees and costs under chapter 37 of the Civil Practice and Remedies Code, this claim for attorney's fees remains a live controversy and has not been rendered moot. *See Camarena*, 754 S.W.2d at 151; *see also Pate*, 2014 WL 172509, at \*2-3.

**V. Conclusion**

The trial court erred in denying Kountze ISD's plea to the jurisdiction as to Parents' constitutional claims and statutory claims under chapters 106 and 110 of the Civil Practice and Remedies Code when those claims were rendered moot by Kountze ISD's adoption of a new policy that resolved any live controversy between the parties. We reverse the trial court's order in part and render judgment that Kountze ISD's plea to the jurisdiction is granted as to these claims and any claims for attorney's fees under chapters 106 and 110. We vacate the October 18,

25

2012 temporary injunction. As to Parents' claims for attorney's fees under the Declaratory Judgment Act, we affirm the trial court's order denying Kountze ISD's plea to the jurisdiction and remand this cause to the trial court to determine recoverable attorney's fees, if any.

REVERSED AND RENDERED IN PART, AFFIRMED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on December 4, 2013
Opinion Delivered May 8, 2014

Before McKeithen, C.J., Kreger, and Horton, JJ.