Opinion issued September 28, 2021



In The

# Court of Appeals

For The

## First District of Texas

————————————————

## NO. 01-20-00028-CV

————————————————

## ROBERT H. GOODE JR., Appellant

## V.

## STEPHANIE MCGUIRE, Appellee

On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Case No. 468981

## MEMORANDUM OPINION

This is an appeal from a contested guardianship matter. In this appeal, Robert
H. Goode, Jr. ("Bob") challenges several related orders concerning the guardianship
proceedings for his wife, Lockie Goode. The probate court found that Lockie was
totally incapacitated, and that Bob was unsuitable to serve as the guardian of her

person. The court appointed Kathleen M. Vossler as the permanent guardian of Lockie's person, and it created a management trust for Lockie's benefit. The court found that Stephanie McGuire, Lockie's half-sister, acted in good faith and with just cause in filing an application for appointment of a permanent guardian of Lockie's person and for the creation of a management trust. The court therefore awarded statutory attorney's fees, costs, and expenses to be paid to McGuire's attorneys from funds set aside for Lockie's benefit.

On appeal, Bob raises five issues. In his first issue, he argues that the probate court improperly denied him a jury trial. In his second and third issues, he argues that the evidence did not support findings that he was unsuitable to serve as the guardian of Lockie's person or the community administrator for her estate. In the fourth issue, Bob argues that the evidence did not support a finding that McGuire acted in good faith when she filed her application for guardian of Lockie's person and the creation of a management trust. In the fifth issue, Bob argues that the court erred by limiting the scope of trial, which he contends effectively prevented him from introducing relevant evidence.

We affirm.

## Background

Bob and Lockie, who have been married for more than 40 years, lived together in a house in Spring, Texas. In 2017, Lockie was approximately 70 years old, and

2

Bob was approximately 78 years old. Lockie was experiencing memory issues, and she was later diagnosed with Alzheimer's disease and dementia. Bob underwent scheduled back surgery in October 2017, leaving Lockie alone in their house with a car, food, and cash. Bob anticipated that his inpatient recovery would take about a week, and then he would return home. But his recovery lasted much longer than a week, and after he left the hospital, he continued his recuperation at a senior living facility called Bellaire Senior Lodges ("Bellaire Lodge").

**Lockie moves out**

While Bob was in the hospital, Lockie sought help from friends,[1] who recognized that the house was unsafe for her. The house was hoarded, mold was present, and maggots were found in the kitchen. Lockie's cousin, Gloria McCarty, said: "There really are no words to describe what I saw. . . . That environment was safe for no one." Tracy Barney, a social worker who later assisted Lockie, also saw the house, and she said: "It was in terrible condition. It was definitely a hoarder house."

Lockie's friends helped her move to a condominium that she and Bob owned, but the friends soon discovered that the condominium was also unsafe. Like the house, it was heavily cluttered, and it lacked air conditioning. Lockie's friends

---

[1] The friends who helped Lockie were Debbie Silverman and Jo Ann Peek. Peek died before trial in this case, and Debbie Silverman did not testify.

contacted Lockie's maternal half-sister, Stephanie McGuire, who arranged for Lockie to spend about a week with McCarty at her home in Centreville, Texas, before helping Lockie move to an apartment in Manvel, near Pearland.

While she was in Centreville with McCarty, Lockie refused to take Bob's calls, saying that she was finally out of that situation and did not want to return. Lockie did not see Bob from the time she left the house in October 2017 until about April 2018. From October 2017 until early 2018, Bob had no contact with Lockie. In early 2018, both Lockie and Bob expressed some interest in divorce. Lockie filed for divorce, and Bob later said he was grateful she filed for divorce at that time.

In early 2018, McGuire helped Lockie engage the services of attorney Sarah Williams and the Elder Advisory Group, LLC. Tracy Barney, a licensed clinical social worker with the Elder Advisory Group, was assigned as Lockie's geriatric case manager. Barney accompanied Lockie to an appointment with a neurologist, who determined that Lockie was experiencing moderate to severe Alzheimer's symptoms.

**Bob and Lockie reunite**

At trial, Barney testified that one of her initial goals was to help reunite Bob and Lockie. At Lockie's request, Barney facilitated a phone call between Bob and Lockie. Later McGuire drove Lockie to Bellaire Lodge to speak with Bob in person, and Barney met them there. In April 2018, Lockie spent the weekend with Bob at

Bellaire Lodge, decided to remain with him, and never returned to her apartment. After Lockie reunited with Bob, her relatives—including McCarty, McGuire, and Lockie's adult son Guy Roberts—were unable to contact her. At trial, Bob testified that between mid-2018 and December 2019, Lockie had three new phones and new phone numbers.[2]

**McGuire and Bob seek guardianship**

In July 2018, McGuire filed an application seeking appointment of a permanent guardian of Lockie's person and estate or, alternatively, creation of a management trust in lieu of appointment of a guardian of the estate. She asserted that Lockie was incapacitated due to moderate-to-severe "dementia of the Alzheimer's Type," and a court-ordered evaluation later showed that Lockie was completely incapacitated. Around the same time, McGuire also sought appointment of a guardian of the person and estate for Bob, but his evaluation showed that he was not incapacitated. In December 2018, Bob filed an application seeking to be appointed permanent guardian of Lockie's person and community administrator. The probate court appointed Karen Blomstrom to be the attorney ad litem for Lockie, and it appointed Kathleen Vossler to be the guardian ad litem for Lockie.

---

[2] In Spring 2019, Bob and Lockie moved into their condominium together.

**Pretrial hearing and the scope of trial**

Before trial, Bob demanded a jury, but at the pretrial hearing on December 2, 2019, the probate judge told the parties that he did not see a need for a jury because both Bob and McGuire contended that Lockie needed a guardian. The probate judge said: "[T]he only thing the jury should hear are contested issues. . . . I don't think it's in your client's best interest for us to have a week trial when the issue of capacity is really not an issue." Vossler stated on the record that she believed a guardianship was in Lockie's best interest.

The court informed the parties that it viewed the question of whether McGuire's application was filed in good faith and for just cause was "more of a legal issue than a fact issue."[3] The court also questioned: "[I]f you're both seeking guardianship, then how could there be not good faith and for just cause?" The court and McGuire's counsel both acknowledged that Bob had statutory priority to serve as the guardian of Lockie's person unless he was found disqualified or unsuitable.[4] The court determined that the scope of trial would be limited to Bob's suitability to

---

[3]    *See* TEX. ESTATES CODE § 1155.054 (authorizing award of attorney's fees to attorney who represented party who filed application for guardianship; "The court may not authorize attorney's fees under this section unless *the court finds* that the applicant acted in good faith and for just cause in the filing and prosecution of the application.") (emphasis added)

[4]    *See* TEX. ESTATES CODE § 1104.102 (Appointment Preferences).

serve as Lockie's guardian—as opposed to including McGuire's suitability to serve as guardian as well—because the statutory preference would apply unless he is disqualified to serve. The probate court informed the parties that it would hold a bench trial on the question of Bob's qualification and suitability to serve as Lockie's guardian.[5] The court specifically told the parties that they were not trying McGuire's case. At the pretrial hearing, no party objected to the court trying the case to the bench with a limited scope.

**The bench trial**

Trial was held on December 9–12, 2019. A report from Dr. Kunik, the court-appointed psychiatrist who evaluated Lockie in September 2018, was admitted into evidence. Dr. Kunik diagnosed Lockie with "major neurocognitive disorder likely secondary to Alzheimer's disease and B12 deficiency." He stated that improvement in her condition was not possible. He stated that Lockie had deficits in short term memory, long term memory, immediate recall, problem solving, logical reasoning, grasping abstract aspects of her situation, interpreting idiomatic expressions or proverbs, and breaking down complex tasks into simple steps and carrying them out. He noted that Lockie's periods of impairment from those deficits "vary substantially

---

[5]     *See* TEX. ESTATES CODE § 1104.352 ("A person may not be appointed guardian if the person is a person, institution, or corporation found by *the court* to be unsuitable.") (emphasis added).

in frequency, severity, or duration." Dr. Kunik determined that Lockie could manage basic activities of daily living—such as bathing, dressing, and walking—with assistance and services. He determined that Lockie was not able to do the following:

- Make complex business, managerial, and financial decisions;

- Manage a personal bank account;

- Safely operate a motor vehicle;

- Vote in a public election;

- Make decisions regarding marriage or divorce;

- Determine [her] own residence;

- Administer own medications on a daily basis;

- Attend to instrumental activities of daily living (e.g., shopping, cooking, traveling, cleaning);

- Consent to medical and dental treatment; and

- Consent to psychological and psychiatric treatment.

Dr. Kunik opined that Lockie was completely incapacitated, and he recommended that she not attend court hearings because she would not be able to understand or participate. He also recommended that she have 16 to 24 hours of supervision daily.

Lockie testified and admitted that she had some memory problems. She said she wanted to be with Bob, to remain married to him, and for him to be her guardian. Lockie testified that she had friends, but she did not know where they are and had

8

not seen them in a long time. She could not recall the names of family members or name any interests or hobbies. Lockie testified that she does not drive. She said that McGuire had "definitely not been helpful," and she did not wish to see McGuire.

Bob testified that he and Lockie had been married for almost 42 years. He testified that Lockie had no separate property and that their community estate had a value of about $2 million. Bob said he had six small businesses, and he maintained that he did not need assistance with any personal paperwork because he is very organized. He denied any convictions for felonies, elder abuse, or crimes of moral turpitude. He testified that he had been found to have capacity by a psychiatrist, and he had completed the Texas Guardianship Training Class. He also testified that he had been injured and exposed to Agent Orange while serving in the military in the Vietnam War. As a result, he had undergone a total of seven back surgeries and was considered 100% physically disabled by the Veteran's Administration. He said, however, that he has "most of [his] physical capacities."

Bob initially testified that he agreed that Lockie is incapacitated. He asserted that he would follow doctors' recommendations if appointed guardian of Lockie's person, but he expressed disagreement with many findings and recommendations. Bob thought Lockie should attend hearings in the guardianship case; believed Lockie could cook with supervision or while he was present in the home; thought that Lockie could and should drive with supervision because he viewed it as good therapy

for her. He denied that Lockie needed help with activities of daily living, such as personal hygiene activities, and he said that it was sufficient for someone to be in the home in the event of an accident. Bob disagreed that Lockie would deteriorate over time.

Although he had contracted with a home health care service, he said that he would not permit a sitter to come to his house while he is present, and he would not permit the care agency to take Lockie to doctors' appointments or help manage her medication regimen. He also said that it was unnecessary to hire someone to do housekeeping. He testified that he does some household chores, and Lockie does laundry, washes dishes by hand, and sometimes cleans the bathrooms.

Bob said that he and Lockie go shopping, run errands, eat out, watch television, and visit neighbors. He also testified about taking her to medical appointments. Bob discussed his plans for Lockie when he undergoes a necessary knee replacement surgery in the future. He intends to rely on a friend in Dallas and his sister, who might come from Nashville to help Lockie. In addition, the home health care agency could provide some care. Bob said that he had executed a power of attorney including instructions on how to care for Lockie if he should be hospitalized or unavailable in the future. He said that he would put the contact information for the home health care agency in Lockie's phone so she could contact them in the event that he was unavailable.

Bob denied being a hoarder, and he said that he and Lockie did not live in a hoarded house. When shown a photograph of a cluttered living area at the house, he said it depicted "a lot of our belongings and furniture that someone took and jumbled all over the place to make it look like we live in a junkyard." He agreed that the photos of the condominium showed a living space that was a work in progress because they had not decided what to keep in that home. He also testified that he planned to hire contractors to clean and repair the house so they could sell it.

Bob testified that he and Lockie had eight or ten active credit cards, not including the additional unsolicited credit cards that they received in the mail. He was shown photographs of dozens of credit cards found in his house. He said they had all expired and he was keeping them to make a holiday garland. Bob testified that he and Lockie had between 10 and 15 separate savings, checking, or other bank accounts. He acknowledged that he and Lockie had an additional $25,000 in unclaimed property that he had not collected. Bob also admitted that, for several years, he had failed to file tax returns, but he testified that he sent payments to the IRS and had a credit on his account. He also failed to deposit thousands of dollars in checks for so long that the checks expired.

Prior to his surgery, Bob failed to make many credit card and utility payments and property taxes on time, resulting in disconnect notices and threats of collection lawsuits and imposition of tax liens. He also acknowledged writing Lockie a letter

11

in February 2018 in which he expressed anger using insulting and vitriolic language and instructed Lockie to hire a contractor and mold removal company to clean and remediate the house. Bob denied ever trying to divorce Lockie. He conceded that his lawyer had drafted a divorce petition, but he claimed it was a tactic, without explaining what he had hoped to accomplish. He believes that McGuire coerced Lockie into filing for divorce in 2018.

Bob acknowledged that he wrote by hand a letter that Lockie signed five months after Dr. Kunik determined that she was completely incapacitated. The letter accuses McGuire of forging Lockie's signature and asks for certain periodic payments to be transferred to a different bank account.

Lockie's cousin, McCarty, testified that she was concerned about Lockie's welfare, particularly because "[n]one of us have heard from Lockie in the last two years." She said that she and Lockie typically spoke about twice a year. She described Bob as having been overbearing and controlling of Lockie throughout their marriage.

Barney, Lockie's geriatric case manager who had helped reunite Bob and Lockie, said that Bob "was often very agitated and upset about various things that were going on or that he perceived to be going on." She also described Bob as "controlling," but she said that she believes Bob loves Lockie. She opined that Bob

could not provide adequate supervision for Lockie due to her serious health conditions.

Guy Roberts, Lockie's adult son, testified that he lives in Prague, Czechoslovakia and travels to Houston about once a year in connection with his work in theater. He said that he visits his mother when he comes to Houston, sends her flowers three times a year, and speaks with her on the phone. He said that Bob has been on the phone with Lockie during every phone call he had with his mother over the prior two years. He testified that he wanted the court to appoint a guardian other than Bob in case he dies before Lockie.

**The probate court announces its ruling.**

On the morning of December 13, 2019, after four days of trial, the probate judge announced his ruling and findings on the record. McGuire's attorney announced in open court that McGuire was withdrawing her application to be appointed the guardian of Lockie's person in favor of the court's appointment of an independent guardian of Lockie's person. At 2:05 p.m. Bob filed a written document entitled "Objection to Denial of Constitutional Right to Jury Trial," which stated that a written judgment had not yet been signed and requested unspecified "other and further relief to which Robert H. Goode, Jr. may show himself justly entitled to receive."

## The trial court's final orders

On December 18, 2019, the probate judge signed an order appointing a permanent guardian of the person and creating a § 1301.053 trust for the benefit of Lockie. In its order, and relevant to this appeal, the trial court found that:

- Lockie is totally incapacitated as to her person and estate;

- Lockie is unable to provide food, clothing, or shelter for herself, care for her own physical health, or manage her own financial affairs and property;

- Lockie lacks the capacity to make personal decisions regarding residence, voting, operating a motor vehicle, purchasing or owning a firearm, and marriage;

- Bob is unsuitable to serve as guardian of Lockie's person;

- Bob is unsuitable to serve as community administrator for Lockie's estate;

- McGuire brought her Application for Appointment of Permanent Guardian of the Person and Creation of a Management Trust, and all amendments thereto, in good faith and with just cause . . . ;

- Bob brought his Application for Appointment of Permanent Guardian of the Person and Application for Appointment for Community Administrator for Lockie and all amendments thereto, in good faith and with just cause . . . .

The court appointed Vossler as permanent guardian of Lockie's person.

On January 17, 2020, the trial court signed a "Final Order Granting Attorney Fees, Costs, and Expenses." The court awarded $123,625 in trial attorney's fees, $11,390.41 in expenses, and $40,000 and $30,000 in conditional appellate attorney's fees, should McGuire prevail on appeal in the court of appeals or Supreme Court of Texas, respectively. On January 24, 2020, the trial court signed an "Order Creating

14

§ 1301.053 Management Trust for the Benefit of Lockie L. Goode Pursuant to Texas Estates Code § 1301.053." Bob filed individual notices of appeal from each of the three orders, and they were consolidated into one appeal in this court.

**Analysis**

**I.  Bob waived his right to a jury trial.**

In his first issue on appeal, Bob argues that the trial court erred by proceeding with a bench trial despite the fact that he had filed a jury demand and paid the fee.

A party's right to try his case before a jury is a constitutional right that can be waived. *In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[A] perfected right to a jury trial in a civil case may be waived by a party's failure to act when the trial court proceeds with a bench trial."). *But see Interest of J.M.*, No. 12-19-00353-CV, 2020 WL 1528054, at *9 (Tex. App.—Tyler Mar. 31, 2020, no pet.) (mem. op.) (identifying line of Texas intermediate appellate court cases holding that party does not waive right to trial by jury by participating in bench trial after having received an adverse ruling on jury demand). "Even when a civil litigant has perfected a right to trial by jury, that litigant must object or affirmatively indicate an intention to stand on his perfected right. For example, a litigant waives the right to trial by jury if he participates in a bench trial without objection." *Alam v. Wilshire & Scott, P.C.*, No. 01-06-00604-CV, 2007 WL 2011048, at *3 (Tex. App.—Houston [1st Dist.] July 12, 2007, no pet.) (mem. op.).

15

The probate court held a pretrial hearing to address the proposed jury charge, the parties' motions in limine, and preadmission of evidence. At the hearing, the probate court judge indicated that he did not believe there was a fact question on Lockie's capacity because McGuire, Bob, and Vossler, the guardian ad litem, all agreed that Lockie was incapacitated and in need of a guardian. Because the Estates Code gives a husband priority to serve as the guardian of his wife's person, the court questioned whether a jury was needed because, in his opinion, the sole question was whether Bob was suitable or disqualified.

Bob's counsel asserted that the question of McGuire's good faith was a contested fact issue that should be submitted to the jury.

| | |
|---|---|
| Bob's counsel: | Good faith always goes to a jury. It's always a fact issue. It's a fact issue in every kind of case that exists if it goes to a jury. But the disqualification could go to a jury—all of it could—and then you could take it out of their hands. So if we want to go down that road, that's fine. But ours has not— |
| The Court: | Let me ask you: Are you proposing that we have a—impanel a jury for the whole week, hear all the testimony and let them answer three questions? |
| Bob's counsel: | No. I'm saying that a jury request was filed and that you can take it away from the jury. |
| The Court: | So your proposal is we submit whatever the entire charge is to the jury and then— |
| McGuire's counsel: | She's saying reverse the jury's decision. |

16

Bob's counsel:      No, I'm not. . . . What I am saying is . . . you can take everything away from the jury, so there is no point in having one is what I'm saying. . . . What I'm saying is we can argue all day. But if you decide to take it out of the hands of the jury, we stand by your decision.

The Court:          Meaning that the Court can hear it?

Bob's counsel:      Absolutely.

Bob's counsel maintained that good faith and the amount of attorney's fees should not be decided by submission to the court, however, when the probate court reiterated that there would be no jury trial, Bob's counsel did not object.

After three days of testimony, the probate court rendered judgment by announcing its decision in open court on the record. Later that day, Bob filed a written "Objection to Denial of Constitutional Right to Jury Trial." In its findings of fact, the trial court found: "After the court's rendition on December 13, 2019, Robert's counsel complained, for the first time, about not having a jury trial." The probate court entered a written order appointing a permanent guardian of Lockie's person on December 18, 2019. In its conclusions of law regarding the December 18, 2019 order, the trial court concluded: "Robert waived his right to a jury trial."

We agree with the probate court. Although Bob demanded a jury and paid the fee, at the pretrial conference, his attorney agreed to a bench trial on the issue of his suitability and qualification to serve as Lockie's guardian. When the court later ruled that there would be no jury trial at all, including as to McGuire's good faith, Bob's

17

counsel did not object or affirmatively indicate that Bob intended to stand on his perfected right to a jury trial. He participated in the bench trial, and then he objected to the absence of a jury after judgment was rendered. That objection was untimely. *See* TEX. R. APP. P. 33.1 (objection must be timely); *see also City of Hous. v. Arney*, 680 S.W.2d 867, 873 (Tex. App.—Houston [1st Dist.] 1984, no writ) ("After the court rules adversely to his position, appellant will not be heard to complain that he was entitled to have a jury decide the fact question rather than the court."), *disapproved on other grounds by Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175 (Tex. 1994). We conclude that Bob waived his demand for a jury trial.

We overrule Bob's first issue.

## II. Several issues have been mooted by events that occurred after this appeal was filed.

### A. Procedural history

After the trial, in May 2020, the probate court terminated the trust, and two months later, it appointed Catherine Wylie temporary guardian of Lockie's estate. Bob filed a petition for writ of mandamus from that order, and he opposed the appointment of a permanent guardian of Lockie's estate in the trial court. Meanwhile, in January 2021, Vossler asked to resign as guardian of Lockie's person. The probate court accepted Vossler's resignation and appointed Catherine Wylie as successor guardian of Lockie's person. Bob did not appeal from this order.

18

In March 2021, Bob nonsuited his claims and arguments regarding the appointment of a permanent guardian of Lockie's estate, saying, "The continuation of these trials has served to only drain the Goodes physically and emotionally, and he no longer wishes to continue litigating while the issues are on appeal." He also expressly stated that he was not abandoning "his right to visit and/or live with his spouse at a facility." In April 2021, the trial court appointed Catherine Wylie permanent guardian of Lockie's estate.

In May 2021, McGuire, the real party in interest in the mandamus proceeding Bob had filed in response to the appointment of Wylie as temporary guardian of Lockie's estate, filed a motion to dismiss the mandamus proceeding. In her motion to dismiss, she indicated that she believed parts of this appeal have been mooted by events and orders issued after the notice of appeal was filed in this case. We agree.

## B.     Mootness and probate proceedings

"Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties, and that the case be justiciable." *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443). "The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the

live controversy ceases because of subsequent events." *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). Like the doctrines of ripeness and standing, the mootness doctrine prevents the rendition of advisory opinions. *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634–35 (Tex. 2021); *see Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) ("The courts of this state are not empowered to give advisory opinions."); *see also* TEX. CONST. art. II, § 1 (separation of powers). Under the mootness doctrine, "a trial court's entry of a final judgment will often moot an interlocutory appeal or mandamus petition that challenges a prior trial-court order." *Elec. Reliability Council*, 619 S.W.3d at 635; *see Roccaforte v. Jefferson Cty.*, 341 S.W.3d 919, 922 & n.5 (Tex. 2011) (quoting *Hernandez v. Ebrom*, 289 S.W.3d 316, 319 (Tex. 2009)).

Generally, appeals may be taken only from final judgments. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Probate proceedings are an exception to the "one final judgment" rule. *Id.* at 192. The probate court has continuing jurisdiction from the time an application for appointment of a guardian is filed until the guardianship is settled or closed. TEX. ESTATES CODE § 1022.002; *see Wood, ex*

20

*rel. Green v. Dalhart R & R Mach. Works, Inc.*, 259 S.W.3d 229, 230 (Tex. App.—Amarillo 2008, no pet.). In probate proceedings, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Lehmann*, 39 S.W.3d at 192. Ordinarily, courts discuss this exception to the "one final judgment" rule in the context of the appealability of an interlocutory order. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (noting that need to review controlling, intermediate decisions before error can affect later phases of probate proceeding justifies exception to "one final judgment" rule). However, the continuing nature of probate proceedings may also result in the mooting of an appeal from an earlier order by the probate court's issuance of a later order. *See Elec. Reliability Council*, 619 S.W.3d at 634–37 (final judgment may moot earlier, interlocutory order).

## C. Bob's challenge to the probate court's finding that he was unsuitable to serve as the guardian of Lockie's person is moot.

In his second issue, Bob argues that the evidence did not support a finding that he was unsuitable to serve as guardian of Lockie's person. In his brief, he seeks rendition and appointment as guardian of Lockie's person or, in the alternative, remand for a new jury trial on the merits. This is a challenge to the December 2019 order appointing Vossler permanent guardian of Lockie's person. That order has since been superseded by the January 2021 order accepting Vossler's resignation and appointing Wylie as successor guardian of Lockie's person. Therefore, any controversy about the December 2019 order has ceased. *See Matthews*, 484 S.W.3d

at 418. Furthermore, Bob has not appealed from the January 2021 order, so any challenge to the appointment of Wylie is waived. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (stating that courts of appeals may not reverse for unassigned error); *Stoll v. Lewis*, No. 01-08-00556-CV, 2009 WL 1331351, at *3 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. denied) (mem. op.) (stating absent fundamental error, court of appeals may not reverse for unassigned error).

Moreover, the record supports a conclusion that the trial court did not abuse its discretion by finding Bob unsuitable to serve as Lockie's guardian.

Ordinarily a probate court has broad discretion in selecting a guardian "according to the circumstances and considering the incapacitated person's best interests." TEX. ESTATES CODE § 1104.101; *see Johnson v. Johnson*, No. 01-04-00813-CV, 2005 WL 615421, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2005, no pet.) (mem. op.) (*citing Trimble v. Tex. Dep't of Prot. & Reg. Servs.*, 981 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1998, no pet.). A trial court abuses its discretion when it acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Legal and factual sufficiency of the evidence are not independent grounds for asserting error. *See In re Fuentes*, 506 S.W.3d 586, 593 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Instead, these are relevant factors in assessing whether the court abused its

discretion, and we determine whether the court had sufficient information on which to exercise its discretion and whether it erred in its application of that discretion. *Id.*

Under the Texas Estates Code, when an incapacitated woman's husband is eligible to serve as her guardian, he is "entitled to the guardianship in preference to any other person." TEX. ESTATES CODE § 1104.102(1). A person is eligible to serve as guardian if he is not disqualified. *See id.* §§ 1104.351–.358; *Guardianship of Allen*, No. 12-14-00249-CV, 2015 WL 7280894, at *2 (Tex. App.—Tyler Nov. 18, 2015, no pet.) (mem. op.); *Trimble*, 981 S.W.2d. at 215 (citing the predecessor disqualification section of Texas Probate Code). The Estates Code establishes several grounds for disqualification of a potential guardian. *See* TEX. ESTATES CODE 1104.351–.359. As relevant to this case, a person may not be appointed guardian if he is "found by the court to be unsuitable." *see id.* § 1104.352.

Here, the record showed that Bob suffers from a hoarding disorder for which he refuses to accept help, he left Lockie alone in an unsafe situation when he underwent back surgery, he did not understand and accept Lockie's diagnosis and prognosis, he is reluctant to accept outside help as necessary to assist Lockie with her needs, and he is physically disabled. This evidence shows that Bob is unable to provide for the type of care Lockie needs now and as her Alzheimer's symptoms progress. The evidence adduced at trial was sufficient to enable the probate court to

23

exercise its discretion, and it does not support a conclusion that the court abused that discretion. *See Fuentes*, 506 S.W.3d at 593.

We overrule Bob's second issue.

**D.      Bob's challenge to the probate court's finding that he was unsuitable to serve as community administrator of Lockie's estate is moot.**

In his third issue, Bob argues that the evidence did not support the trial court's finding that he was unsuitable to serve as community administrator over Lockie's estate. This is an appeal from the January 2020 order creating a management trust. The trust has been terminated, Wylie has been appointed permanent guardian of Lockie's estate, and Bob has nonsuited his opposition to Wylie's appointment. Because Bob dropped his challenge and request to be appointed community administrator, any controversy between the parties on this issue has ceased.

**E.      Bob's challenge to the creation of a management trust is moot.**

In his fifth issue, Bob argues that the court erred by creating a trust and by finding McGuire in good faith after it limited the scope of trial. Bob complains that the court's limitation on the scope of trial deprived him of witnesses, testimony and cross examination and other evidence. This portion of Bob's fifth issue is moot because after he filed the notice of appeal from the order creating a management trust, the probate court terminated the trust. We overrule this part of Bob's fifth issue as moot.

**III.** **The evidence supports the trial court's finding that McGuire acted in good faith and with just cause in filing her application for the appointment of guardians of the person and estate for Lockie.**

In his fourth issue, Bob argues that the evidence did not support a finding that McGuire acted in good faith when she filed an application for appointment of a guardian of Lockie's person and for the creation of a management trust. We therefore construe Bob's fourth issue as a challenge to the award of attorney's fees.

We review a court's award of attorney's fees in a guardianship proceeding for an abuse of discretion. *Epstein v. Hutchison*, 175 S.W.3d 805, 807 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). We will "reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *20 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.). We view the evidence in the light most favorable to the trial court's decision, and absent an abuse of discretion, we may not substitute our judgment for that of the trial court. *Epstein*, 175 S.W.3d at 807.

Under the Estates Code, a court that has created a guardianship has discretion to award attorney's fees to a person who filed the application for appointment of a guardian. TEX. ESTATES CODE § 1155.054(a); *McIntyre v. McIntyre*, No. 14-18-00609-CV, 2019 WL 4511323, at *2 (Tex. App.—Houston [14th Dist.] Sep. 19, 2019, no pet.) (mem. op.); *Guardianship of Burley*, 499 S.W.3d 196, 199 (Tex.

App.—Houston [14th Dist.] 2016, pet. denied). The award is paid "from available funds of the ward's estate." TEX. ESTATES CODE § 1155.054(a). "The court may not authorize attorney's fees under this section unless the court finds that the applicant acted in good faith and for just cause in the filing and prosecution of the application."[6] *Id.* § 1155.054(c).

"Good faith" and "just cause" are not defined by the Estates Code, and no Texas case has defined these terms in the context of a discretionary award of attorney's fees to a party who filed an application for appointment of a guardian. However, the Estates Code includes a similar attorney's fees provision in regard to the probate of a will. *See* TEX. ESTATES CODE § 352.052(a) (awarding attorney's fees from the estate to a person designated as executor or administrator who defends or prosecutes a proceeding to have the will admitted to probate and acts in "good faith and with just cause"). In this context, "good faith" means an action prompted by honesty of intention or a reasonable belief that the action was probably correct. *Matter of Kam*, 484 S.W.3d 642, 654–55 (Tex. App.—El Paso 2016, pet. denied). A party acts "for just cause" when her actions are based on reasonable grounds and there is a fair and honest reason for her actions. *Id.*

---

[6] In addition to the provision awarding attorney's fees to a party who filed an application for appointment of a guardian in good faith and with just cause, the Estates Code includes provisions to allow the court to tax attorney's fees or costs against a party who acted in bad faith or without just cause. *See* TEX. ESTATES CODE § 1155.054(d) (attorney's fees); *id.* §1155.151 (c) (costs).

On appeal, Bob argues that the court abused its discretion by finding that McGuire acted in good faith and with just cause in filing her application for appointment of a guardian of Lockie's person and creation of a management trust. First, Bob asserts that the court prejudged the matter by commenting at the pretrial hearing that because both McGuire and Bob agreed that a guardianship was necessary, they both acted in good faith and with just cause in petitioning the court for a guardianship.

McGuire filed the application for appointment of a guardian of Lockie's person, and all parties except for Lockie herself, who was found to be completely incapacitated due to her Alzheimer's disease, agreed that a guardianship was necessary. The record thus supports a conclusion that McGuire filed her application based on a reasonable belief that her action was probably correct. *See Kam*, 484 S.W.3d at 654–55.

The evidence also supports a conclusion that McGuire's action was based on reasonable grounds and that she had a fair and honest reason for taking the actions she did. *See id.* First, the need for a guardianship was established by evidence of Lockie's complete incapacity to manage her own affairs and her need for support with activities of daily living. The record demonstrates that Bob was unsuitable to serve as Lockie's guardian or the community administrator. Bob had previously left her alone in an unsanitary and dangerous living situation at a time when her memory

issues had become apparent to him. He testified about his reluctance and unwillingness to accept help in organizing and managing the couple's affairs and finances as well help in meeting Lockie's needs for support with activities of daily living. He did not agree that he had a hoarding disorder, which was demonstrated through testimony and photographic evidence at trial, and he refused to accept help for his hoarding disorder. Bob failed to prudently manage their finances, as evidenced by the contrast between his assertions that they had a sizeable estate and the numerous late notices and threats of disconnection or legal action due to unpaid bills. He also failed to deposit thousands of dollars in checks for so long that the checks expired. And he failed to claim property in his and Lockie's name that was valued at about $25,000. This evidence supports a conclusion that McGuire had reasonable grounds and a fair and honest reason for filing her application for the appointment of a guardian of Lockie's person and the creation of management trust. In other words, the evidence supports a conclusion that McGuire acted with just cause. *See id.*

On appeal, Bob conflates the "good faith" and "for just cause" test for an award of attorney's fees, with the statutory provision that allows a court to tax attorney's fees against a party who acts in "bad faith" or "without just cause." His assertion that McGuire acted in bad faith is based on unsupported factual allegations.

28

Specifically, Bob relies on his own motion in limine as proof of the facts alleged therein. But the facts alleged therein are not supported by the record on appeal.

We conclude that the court had sufficient evidence to conclude that McGuire acted in good faith and for just cause in filing her application for appointment of a guardian of Lockie's person and creation of a management trust, and that it did not abuse its discretion by awarding attorney's fees to McGuire's attorneys.

We overrule Bob's fourth issue.

## IV. Bob's argument that the probate court's limitation of the scope of trial deprived him of the opportunity to introduce necessary evidence is inadequately briefed.

In his fifth issue, Bob raises two challenges. First, he asserts that the probate court erred by creating a management trust when it had limited the scope of trial to his application for guardianship of Lockie's person and to be appointed community administrator. We have already explained that this challenge is moot. Second, he asserts that the court erred by finding McGuire in good faith when the court limited the scope of trial, "depriving [Bob] of witnesses, testimony, cross-examination, and any evidence at all." He maintains that because McGuire did not testify, there was no evidence on which the court could find that she acted in good faith and with just cause. We have already held that the court had sufficient evidence to make that finding and reach that conclusion of law. Bob also contends that he relied on the court's limitation of the scope of trial and did not introduce evidence that he now

29

argues is relevant and indispensable to a finding on whether McGuire acted in good faith.

This part of Bob's fifth issue is inadequately briefed. Although he provided a citation for a de novo standard of review for this issue, he did not provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i).

We overrule Bob's fifth issue.

## Conclusion

We affirm the judgment of the probate court. All pending motions are dismissed as moot.

Peter Kelly
Justice

Panel consists of Justices Kelly, Guerra, and Farris.