ACCEPTED
15-25-00230-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/19/2025 9:50 AM
CHRISTOPHER A. PRINE
CLERK

**15-25-00230-CV**

# IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/19/2025 9:50:28 AM
CHRISTOPHER A. PRINE
Clerk

_____

**PANOLA OPERATING, LLC AND AXE DIRECTIONAL DRILLING, LLC,**
*APPELLANTS*

**v.**

**IRONMAN RECYCLING, LLC SWE EAST TEXAS, LLC AND
GEP HAYNESVILLE II, LLC,**
*APPELLEES*

_____

ON APPEAL FROM TEXAS BUSINESS COURT, ELEVENTH DIVISION
HARRIS COUNTY, TEXAS
NO. 25-BC11A-0085

_____

**APPELLANT'S EMERGENCY MOTION TO STAY PARAGRAPH 47(i) OF
TEMPORARY INJUNCTION PENDING APPEAL**

_____

**TO THE HONORABLE COURT OF APPEALS:**

Appellant Panola Operating LLC ("Panola") seeks an emergency stay of Paragraph 47(i) of the business court's Temporary Injunction, pending this Court's consideration of this appeal by Appellants Panola and AXE Directional Drilling LLC ("AXE"). On December 15, the business court denied Appellants' application for temporary injunction (<u>CR 705</u>)[1] and granted the injunctive relief requested by

---

[1] The Clerk's Record is referred to herein as "CR ____".

Appellees Ironman Recycling, LLC ("Ironman"), SWD East Texas, LLC ("SWD"), and GEP Haynesville II, LLC ("GEP") (collectively, "Appellees") (CR 688). Appellants timely perfected this interlocutory appeal of both orders on December 16, 2025 (CR 707), invoking this Court's jurisdiction under Texas Civil Practice and Remedies Code § 51.014(a)(4) and Texas Rule of Appellate Procedure 26.1(b).

This Motion asks the Court to stay **one** provision of the business court's temporary injunction order ("Injunction"). CR 688. Paragraph 47(i) compels and requires Panola to "immediately vacate" its role as Operator of Ironman Recycling LLC ("Ironman") and to "permit Defendants to assume operatorship" of Ironman. CR 0688 at 0704. Panola requested a stay of this provision from the business court, but that request was denied. CR 723. Appellees thereafter posted bond and sought issuance of a writ on December 18. **Accordingly, if this Court is not able to rule on this emergency motion to stay immediately and before the Injunction goes into effect, Appellants respectfully request that the Court enter a temporary order staying Paragraph 47(i) while it considers this motion.**

This Motion to Stay is necessary to preserve both the status quo and this Court's jurisdiction over the appeal. Panola has served as Operator of Ironman since November 8, 2023 and continues to serve as Operator today. Appellees' counsel sent a demand letter on October 1, 2025, asserting for the first time that Panola had failed to remit allegedly missing operating revenue—marking the first dispute between the

2

parties. Appellees claim that Panola was terminated as Operator effective on November 23, 2025—more than six weeks later, and asks the business court in its counterclaim to declare that termination valid. By ordering Panola's removal as Operator, the Injunction terminates the parties' operator agreement, grants Appellees their ultimate relief, and disturbs—rather than preserves—the last actual, peaceable, non-contested status between the parties. This relief is contrary to Texas law governing temporary injunctions and was not supported by evidence of irreparable harm to Appellees.

If removed as Operator, Panola will go out of business, be forced to lay off its employees, and suffer substantial and irreparable harm to its reputation and goodwill. Maintaining Panola as existing operator during appellate review also serves the public interest by ensuring continuity and regulatory compliance at a permitted disposal facility. The remaining provisions of the Injunction already protect Appellees from any alleged harm, which is also remediable by money damages after a full trial.

The business court abused its discretion by ordering mandatory injunctive relief that contradicts—rather than preserves—the status quo. For these reasons, Panola respectfully requests that the Court stay Paragraph 47(i) of the Injunction pursuant to Texas Rule of Appellate Procedure 29.3. A temporary order is necessary to preserve the parties' rights until disposition of the appeal and to prevent the appeal

from becoming moot. The remaining provisions of the Injunction fully protect Appellees from any alleged harm, and a stay of Paragraph 47(i) preserves—rather than prejudices—the parties' rights pending appeal. Neither Panola nor AXE seeks a stay of any other provision of the Injunction. Mandatory temporary injunctions are particularly disfavored under Texas law because they compel affirmative action and disturb existing conditions rather than maintain them, and courts must exercise extreme caution before granting such relief. The business court failed to apply this heightened scrutiny here, and Panola respectfully requests that this Court should act now to stay this provision.

Because the reporter's record from the temporary-injunction hearing has been requested but is not yet available, Panola supports this motion with sworn affidavit verifying the accuracy of the summarized testimony and will promptly supplement the record once the reporter's record is filed.

## STATEMENT OF RELEVANT FACTS

### I. The Parties' Agreements[2]

The relationships and obligations among the parties are governed by three key agreements:

---

[2] At the time of this Motion, the Reporter's Record is not yet available. Appellants will supplement this Motion with record cites when it is available. Any reference to testimony of Heith Harper (Appellants' representative) and Koble Grell (Appellee's representative) at the December 11 2025 Temporary Injunction Hearing is affirmed by Affidavit of Counsel Holli Pryor-Baze, attached hereto as Appendix Exhibit A.

1. the Master Service Agreement ("MSA"), dated September 6, 2022, between GEP and AXE  (CR 292, as authenticated by CR 406);

2. the Limited Liability Company Agreement ("LLCA") of Ironman Recycling, LLC, executed on November 8, 2023 (CR 305, as authenticated by CR 406); and

3. the Construction and Operation Management Agreement ("COMA"), effective the same date, between Ironman Recycling, LLC as Owner and Panola Operating, LLC as Operator (CR 365 as authenticated by CR 406).

## A. **Ironman and the LLCA**

Ironman Recycling, LLC was formed as a Texas limited liability company to develop and operate a commercial saltwater disposal facility in Panola County, Texas (the "Facility").   Pursuant to the LLCA, AXE held a 40% ownership interest, and GEP (through its affiliate SWD East Texas, LLC) held a 60% ownership interest and served as Manager of the Company. CR 305.  The LLCA required that no sale or disposition of Company assets occur without compliance with the LLCA's procedures and Member protections.

Under Article IV, SWD and AXE each made defined capital contributions toward Ironman's development, construction, and operation.  SWD's contribution consisted primarily of funding and management oversight, while AXE's monetary contribution was much smaller, but it provided construction and operational expertise.  CR 305.  The Facility construction and development costs exceeded the original budget of $7.5 million by $449,000, which came out of operating revenues,

5

and AXE incurred an additional $800,000 in labor costs.  App. Ex. A  (Harper testimony).

AXE has alleged that the LLCA and MSA were founded on fraud.  AXE agreed to lower hauling rates in a November 2023 Work Order based on GEP/SWD's representations that Ironman would credit AXE the difference between the lower hauling rates and the prior rates as part of its capital contribution to Ironman (the "Discount").  App. Ex. A (Harper testimony).  SWD's representative stated the Discount would allow AXE to recover its investment back faster and promised that AXE would receive an acreage dedication "for the life of the lease" in exchange for a lower hauling rate and Plaintiffs' contribution to Ironman.  App. Ex. A (Harper testimony).  AXE relied on these representations in entering into the November Work Order and LLCA, and have now been harmed by such reliance.  App. Ex. A. (Harper testimony).  During the performance of the agreements, GEP/SWD provided financial documents and made additional representations that acknowledged the Discount.  App. Ex. A (Harper testimony).  AXE relied on those documents and SWD's sustained representations in its continuance performance of the  agreements.  App. Ex. A (Harper testimony).

## B. **Panola's Role as Operator**

Simultaneously with Ironman's formation, Ironman entered into the COMA, designating Panola (an affiliate of AXE) as Operator of the Facility, responsible for the management, maintenance, accounting, and reporting. CR 365.

Under Article 6, Ironman is expressly obligated to fund the Facility's operations and reimburse Panola for all documented and authorized expenditures. CR 385-86. Under § 3.2(g), Panola was authorized to pay Ironman's costs "with Owner's funds or, at Operator's election, Operator's funds, which will be reimbursed." CR 375. Under § 5.6, Ironman was responsible for maintaining the operating account(s) from which such expenditures were made. CR 384. The LLCA further required Ironman to use Company funds for all capital and operating expenses and to ensure sufficient funding for its obligations under the COMA. CR 305. SWD as Manager controlled the funding of Ironman.

Panola and AXE were never intended to bear Ironman's construction or operational costs—its role was managerial, not financial. App. Ex. A (Harper testimony). Any payments made by AXE or Panola from its own funds were to be reimbursed by Ironman or SWD. App. Ex. A. (Harper testimony).

## C. **Performance of Agreements**

Between November 2023 and the first half of 2025, the parties operated under these agreements without significant issue. During this time, AXE provided hauling

and disposal services at discounted rates, based on GEP/SWD's representations that the Discount would be credited back to AXE through Ironman's financials.

Additionally, during this period, Ironman's Accounts Receivables started increasing because of significant underpayment by GEP of barrels hauled by AXE and third-party haulers and disposed of at Ironman ("Barrel Underpayment"). App. Ex. A (Harper testimony). The Barrel Underpayment was caused by GEP's use of barrels in its Cignet system that do not coincide with actual barrels hauled. App. Ex. A (Harper testimony). The correct barrel numbers were kept in AXE's SitePro system and entered by drivers based on the GEP's well locations. App. Ex. A (Harper testimony). Between November 2024 and June 2025, the total underpayment is at least $1.14 million. App. Ex. A (Harper testimony). Even after notifying SWD/GEP of the issue, they did not correct the underpayments, investigate the allegations, or credit AXE with the underpayment. App. Ex. A (Harper testimony). Because of the underpayment, AXE was being denied full payment for its hauling services and Ironman received less revenue in its operating account. App. Ex. A (Harper testimony).

### D. Sale of Ironman

In early-2025, GEP/SWD began negotiating the sale of Ironman to Southern Disposal Solutions, LLC or affiliate. App. Ex. A (Harper testimony). AXE was initially provided sale agreements under LLCA Drag Along rights (CR 0324-25) but

later SWD dropped those rights and told AXE that the discussions had proceeded without it.  App. Ex. A (Harper testimony).

SWD claimed that the sale price was $23 million but that included a "Trucking Allocation" valued at $6 million, such that the amount credited to the value of Ironman was significantly lower—$17 million.  App. Ex. A (Harper testimony). AXE repeatedly expressed its disagreement with the this decrease in value. App. Ex. A (Harper testimony).

From mid-September through November, GEP and SWD worked to remove AXE from the sale process, obstruct information, and starve Panola of operating funds.  The following facts are relevant to this Motion:

- In early September, SWD told AXE and Panola that there was a revenue deficit of $2.2 million in the operating account, accusing Panola of taking operating revenues.  App. Ex. A (Harper and Grell testimony). They ignored that any Deficit was caused by the Barrel Underpayment and initial construction costs.  App. Ex. A (Harper and Grell testimony).

- On or about September 23, 2025, SWD executed sale documents that included AXE's 40% Ironman ownership interest—contrary to the LLCA and without adherence to the Drag-Along provision (Section 3.8).  App. Ex. A (Harper testimony).

- On September 24, 2025, SWD swept $1.476 million from Ironman's operating accounts. App. Ex. A (Harper testimony).   There are no contractual provisions allowing this distribution and took all of Ironman's revenue that was used to fund operations.

- Between September 26 and 29, AXE refused the buyout on SWD's terms.  App. Ex. A (Harper testimony).  AXE again requested the

9

purchase agreement with the buyer, and SWD denied it existed or denied AXE access. App. Ex. A (Harper testimony).

- On October 1, 2025, Appellants met with Appellees to inform them that AXE disagreed with the alleged Deficit. App. Ex. A (Harper testimony). AXE told GEP and SWD that the Barrel Underpayment was significant and defeated the allegation of the alleged Deficit.

- On October 1, 2025, counsel GEP and SWD sent a letter stating that Panola had defaulted on the parties' contractual agreements and demanding that Panola repay a deficit of $2.2 million. CR 693.

- On October 13, 2025, GEP issued a notice purporting to terminate the Master Services Agreement with AXE. CR 693.

- On October 24, 2025, SWD/Ironman issued a second notice purporting to terminate the Construction and Operations Management Agreement and remove Panola as Operator effective November 23, 2025. CR 693.

- On November 24, 2025, SWD unilaterally delivered a demand letter asserting that it had elected to compulsorily purchase AXE's 40% membership interest and enclosed a Membership Interest Purchase Agreement ("MIPA"), purporting to force AXE to sell its interest for $3.5 million at a value unilaterally determined by the Manager. CR 693. Whether this price represents fair market value is contested.

## E. Retaliatory Conduct by Appellees

When AXE refused to sign the buyout documents, SWD and GEP initiated a coordinated strategy to starve the Facility of operating funds, manufacture defaults, strip Panola of operational control, and then force a below-value buyout of AXE's membership interest. App. Ex. A (Harper testimony). GEP and SWD pressured AXE into surrendering its ownership interest and diverted operating capital from

Panola. As a result, Panola and AXE suffered substantial losses, including the conversion and diversion of more than $1.4 million in operating funds; and unreimbursed operational expenses fronted by Panola and AXE. App. Ex. A (Harper testimony). As a result, Panola and AXE were forced to advance over $500,000 in out-of-pocket expenses merely to keep the regulatory-sensitive disposal facility operating and prevent immediate regulatory violations. App. Ex. A (Harper testimony).

## II. This Lawsuit and Injunction Proceedings

On October 27, 2025, Panola and Axe filed an Original Petition and Application for Temporary Injunction. CR 0025. Defendants removed the case to Business Court pursuant to Sections 25A.004 and 25A.006(d) of the Texas Government Code and Rule 355 of the Texas Rules of Civil Procedure. CR 0004.

Appellants filed two amended petitions and applications for temporary injunction and supporting affidavits. CR 266; CR410. Appellants asked the business court to enjoin the removal of Panola as Operator, the sale of AXE's ownership interest in Ironman, and the withdrawal of any additional operating funds by SWD, with other ancillary relief. CR 623.

Appellees filed a counterclaim asking to remove Panola as Operator, force the sale of AXE's ownership interest in Ironman, and compel access to bank accounts and operational records, with other ancillary relief. CR 669.

11

The business court held the Temporary Injunction hearing on December 11, 2025. On December 15, the business court granted Appellees' application for temporary injunction in part (CR 688) and denied Appellants' application for temporary injunction entirely (CR 705). The only relief denied to Appellees was the forced sale of AXE's 40% ownership interest in Ironman. CR 0688.

On December 16, Appellants filed their Notice of Interlocutory Appeal. CR 707. On December 17, Panola asked the business court to stay Paragraph 47(i) of the Injunction. CR 717. The stay was subsequently denied. CR 723.

## SUMMARY OF ARGUMENT

Pursuant to Rule 29.3 of the Texas Rules of Appellate Procedure, Appellant respectfully requests that the Court stay the provision of the mandatory temporary injunction that does not preserve the status quo—Paragraph 47(i) that removes Panola as Operator and cancels the COMA. TEX. R. APP. P. 29.3. Appellant makes this request because (1) a "temporary order[] [is] necessary to preserve the parties' rights until disposition of the appeal" and (2) the requested stay will prevent the loss of this Court's jurisdiction under the doctrine of mootness. TEX. R. APP. P. 29.3. This Court's authority to enter temporary orders is extraordinarily broad. *In re Geomet*, 578 S.W.3d at 90 (Rule 29.3 "grants a court of appeals broad authority to "make any temporary orders necessary to preserve the parties' rights.")

Here, the requirement that Panola immediately vacate Ironman as Operator and permit Defendants to assume operatorship of Ironman alters the status quo and fails to preserve Appellant's rights during the pendency of this appeal. The Injunction terminates the COMA, even though (i) Panola asks the business court to declare the termination void and unenforceable because of Appellees first material breach and (ii) Appellees ask for the opposite relief as final disposition on the merits. Additionally, the removal of Panola as Operator would threaten this Court's jurisdiction because it awards Appellees the ultimate relief. Therefore, Appellant respectfully requests that the Court stay the Paragraph 47(i) of the Injunction. The remainder of the Injunction would remain in place.

This Court should stay Paragraph 47(i) of the Injunction during the appeal for at least two independent reasons:

1. Removal of Panola as Operator is not preservation of the status quo, which is the proper purpose of a temporary injunction.

2. None of the harms identified by the business court constitute irreparable injury. The court's concerns—billing disputes, alleged revenue deficits, and accounting irregularities—are classic economic injuries that are fully compensable by money damages or a final accounting. To the extent the court was concerned about discrete operational conduct, any such risk could have been addressed through narrow prohibitory relief rather than the extraordinary step of removing Panola as Operator.

Moreover, Panola has shown that it has a probable right to success on the merits, and there is no harm to Appellees from a short stay of Paragraph 47(i). However, the damage to Panola of the denial of a stay is significant and deadly.

13

## ARGUMENT AND AUTHORITIES

**I.**     **The Court Should Stay The Mandatory Temporary Injunction Because A Stay Is "Necessary To Preserve The Parties' Rights Until Disposition Of The Appeal."**

"When an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security." TEX. R. APP. P. 29.3. Therefore, this Court has the power and authority to issue a stay of Paragraph 47(i) of the Injunction. *In re Abbott,* 645 S.W.3d 276, 282 (Tex. 2022) ("[R]ule [29.3] may authorize a court of appeals 'to preserve the status quo and prevent irreparable harm' to the parties during the pendency of the appeal.") (citation omitted).

The Texas Supreme Court has confirmed that "Rule 29.3 expressly contemplates that [relief to protect a party from irreparable harm] is directly available in the court of appeals." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 89 (Tex. 2019) (orig. proceeding). In *Geomet,* the Court declared that appellate courts have "great flexibility in preserving the status quo based on the unique facts and circumstances presented." *Geomet,* 578 S.W.3d at 89. Similarly, the Austin Court of Appeals has recognized "an appellate court's inherent power to make temporary Orders to preserve the parties' rights until disposition of the appeal.*" Tex. Educ. Agency v. Hous. Indep. Sch. Dist.*, 609 S.W.3d 569, 578 (Tex. App.—Austin 2020,

14

no pet.) (per curiam) *mand. denied sub nom*. *In re Tex. Educ. Agency*, 619 S.W.3d 679 (Tex. 2021) (orig. proceeding).

This function is especially critical in this case because the immediate removal of Panola as Operator of Ironman will alter the status quo and cause catastrophic impact on Panola. Absent a stay by this Court, Paragraph 47(i) alters the status quo and extinguishes Appellant's rights during this appeal.

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton,* 146 S.W.3d 648, 651 (Tex.2004) (quoting *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 617, 358 S.W.2d 589, 589 (1962) (per curiam)). Here, it is undisputed that:

1. Panola has served as Operator since November 8 2023 under the COMA;

2. The last peaceable moment between the parties was no later than October 1, 2025, on which date Appellees issued a default notice and demand letter for repayment of $2.2 million;

3. The purported termination of Panola as Operator was not effective until November 23, 2025, pursuant to a notice of termination on October 24, 2025. CR 648.

This means that **immediately before October 1** was the last "actual, peaceable, noncontested status" between Panola and Appellees. Therefore, any injunction that disturbs that status quo—Panola as Operator—is contrary to Texas law. *Butnaru* at

15

204; *In re Newton,* at 651. Appellee's corporate representative Mr. Kolbe Grell agreed to this point on cross-examination. App. Ex. A (Grell testimony). It is wholly improper to enforce injunctive relief that occurred six weeks **after** the last peaceable moment, when removal of Panola alters the status quo that has existed since **November 8, 2023**. Panola is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). That burden has been met.

It cannot be overlooked that SWD swept Ironman operating funds required by Panola to run Ironman and SWD is claiming that same deficit as grounds to remove Panola. CR 407; App. Ex. A (Harper and Grell testimony). SWD refused to wire the money back after the Southern deal did not close in September and then refused to reimburse Panola for expenses, including over $500,000, contrary to COMA Section 6 provisions. CR 407; App. Ex. A (Harper testimony). SWD cannot take operating funds and then blame Panola for operational instability in order to justify an injunction.

Appellees argue that the court can terminate a contract as injunctive relief based on *Alliance Royalties, LLC v. Boothe,* 313 S.W.3d 493 (Tex. App.—Dallas 2010, no pet.). But this reliance is misplaced. In *Alliance*, the contract terminated under the temporary injunction was **not** the subject of the plaintiff's claims against that defendant, nor was the defendant alleged to have intentionally disabled

16

performance of its own contractual obligations. Here, by contrast, Appellees affirmatively prevented Ironman from performing the very agreement at issue—by withholding funding, blocking operations, and rendering performance impossible. CR 407; App. Ex. A (Harper testimony). Texas law does not permit a party to profit from its own interference with contractual performance, and *Alliance* provides no shelter for such conduct. The Injunction terminating the COMA should be stayed pending appeal.

**II.** **The Court Should Stay The Mandatory Temporary Injunction Because The Requested Stay Will Prevent The Loss Of This Court's Jurisdiction Under The Doctrine Of Mootness.**

A stay of Paragraph 47(i) is also necessary to protect the Court's jurisdiction over this appeal. *See* TEX. GOV'T CODE § 22.221(a). "A court of appeals may issue such a writ to prevent an appeal from becoming moot." *Dall. Morning News v. Fifth Ct. of Appeals*, 842 S.W.2d 655, 658 (Tex. 1992) (orig. proceeding) (citing *Madison v. Martinez,* 42 S.W.2d 84, 86 (Tex. Civ. App. —Dallas 1931, writ ref'd). When an action threatens to render a pending appeal moot, a stay prohibiting that action pending the appeal is appropriate. *H & R Block, Inc. v. Haese*, 992 S.W.2d 437, 439 (Tex. 1999) ("[O]ur stay preserved the issues from becoming moot so that they could be reviewed by [the appellate] court."). When a case is moot, the parties no longer have standing, and the courts must dismiss for want of jurisdiction. *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.,* 484 S.W.3d 416, 418 (Tex. 2016) ("The

17

mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events").

Here, Panola claims that Appellees cannot remove it from Operator because it committed a material breach of the COMA **first** by not funding Ironman and sweeping funds from Ironman and that Appellees cannot benefit in equity of an injunction because of their unclean hands. *Cheniere Energy, Inc*., 585 S.W.3d at 84-85; *Vaughan v. Kizer*, 400 S.W.2d 586, 590 (Tex. Civ. App.—Waco 1966, writ ref'd n.r.e) ("He who comes into equity must come with clean hands, and a complainant's wrongful conduct in a matter or transaction with respect to which he seeks injunctive relief, precludes him from obtaining such relief."). The business court ignored these arguments, which Appellants will show was an abuse of discretion on the merits of the appeal.

Moreover, Appellees' requested injunctive relief is the ultimate relief sought by SWD and GEP in the lawsuit. The Injunction terminates the COMA, and this is entirely improper relief as a temporary injunction. *Walling,* 863 S.W.2d at 58. A temporary injunction may not be used to adjudicate disputed rights or to enforce disputed contract rights or restructure the parties' business relationship. *Butnaru* at 204; *Cheniere Energy, Inc. v. Parallax Enters. LLC,* 585 S.W.3d 70, 83 (Tex. App. 2019) (losing an equity interest and accompanying rights in company is irreparable

injury to justify a temporary injunction). If Panola is removed as Operator now, Appellee could argue that the appeal is moot because it received its ultimate relief. Therefore, the Court should grant the stay to prevent the Court's loss of jurisdiction.

## III. The Court Should Stay Paragraph 47(I) Because Appellees Failed To Demonstrate Irreparable Harm If Panola Remains Operator.

Appellees failed to put on evidence of any immediate, irreparable harm stemming from Panola continuing in its role as Operator during this appeal. A temporary injunction can only be issued if the plaintiff will suffer an "irreparable injury" in the interim. *Butnaru,* 84 S.W.3d at 204. An injury is irreparable if it cannot be satisfied by monetary damages. *Cardinal Health Staffing Network, Inc. v. Bowen,* 106 S.W.3d 230, 235 (Tex.App.—Houston [1st Dist.] 2003) ("To establish an irreparable injury, the applicant must show that it cannot be 'adequately compensated in damages or the damages cannot be measured by any certain pecuniary standard.'").

The business court based its conclusion that Appellees faced "irreparable damage" if Panola remained Operator based on an incorrect determination that:

- *Some unidentified percentage of Panola's recent invoices were slow or incorrect.* **But any slow or incorrect billing, as Appellees alleged, can be made up with money damages**. *Butnaru,* 84 S.W.3d at 204.

- *Panola caused a $2.2 million "Deficit" in operating revenue.* This was hotly disputed at the temporary injunction hearing, with Mr. Harper explaining the alleged discrepancy. Indeed, Mr. Grell admitted that he failed to conduct any investigation into Mr. Harper's explanation that he learned about on October 1. App. Ex. A (Grell testimony). A full

19

accounting is necessary to reconcile the account. **But, in any case, all of these alleged damages are economic and compensable by money damages on final trial.** It is axiomatic that pure economic disputes do not justify injunctive relief. *Butnaru,* 84 S.W.3d at 204.

- *Panola threatened to shut in the disposal well.* This was also hotly contested at the hearing. The evidence showed that Mr. Harper made **one** comment to a customer about shut-in because (i) the customer had not paid outstanding invoices and (ii) SWD had withdrawn all operating funds from Ironman. App. Ex. A (Harper testimony). Mr. Harper testified that he would not shut the facility in. App. Ex. A (Harper testimony). **But, in any case, the appropriate injunctive relief would be to enjoin Panola from shutting in the well, not to terminate agreements, award ultimate relief, and disturb the status quo.**

- *Panola did not timely provide access to financial accounts and records,* This had been remedied by the date of the Injunction hearing, which was confirmed by Mr. Grell. App. Ex. A (Grell testimony). And, the Order compelled Appellants to provide this access.

It was a clear abuse of discretion for the business court to find that "the ongoing deprivation of access to financial information and operating funds constitutes a continuing injury that cannot be cured through later monetary relief." CR 688. *Butnaru* is clear that economic damages do not justify injunctive relief. None of the alleged irreparable harm justifies removal of Panola as Operator.

**IV.  <u>Appellees will not suffer harm from a short stay of Paragraph 47(i), but the damage to Panola is catastrophic.</u>**

Granting a stay of Paragraph 47(i) will not cause Appellees any cognizable harm because the Injunction's remaining provisions already protect every interest Appellees identified as allegedly at risk. The only provision subject to this stay is

the mandatory directive requiring Panola to vacate its role as Operator. All prohibitory and protective provisions of the Injunction would remain fully in force.

First, the balance of equities strongly favors a stay. While Appellees suffer no harm from Panola's continued operation—given the Injunction's remaining safeguards—Panola faces catastrophic, irreversible injury if the stay is denied. Removal as Operator would immediately destroy Panola's business, force layoffs, sever customer relationships, and inflict reputational harm that cannot be undone even if Panola ultimately prevails on appeal. App. Ex. A (Harper testimony). Texas courts consistently hold that destruction of an ongoing business constitutes irreparable harm warranting equitable relief. *Transport Co. of Tex. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 554 (Tex. 1953) (injunction proper to prevent destruction of business before trial); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228-29 (Tex. App.—Fort Worth 2009, pet. denied) (addressing status quo and irreparable injury); *Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ); *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 23–24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *Miller v. Talley Dunn Gallery, LLC*, 2012 WL 6729712, at *6 (Tex. App.—Dallas Dec. 28, 2012, no pet.) (mem. op.).

No bond can protect Panola from the harm caused by enforcement of Paragraph 47(i). Once Panola is removed as Operator, its business relationships,

regulatory standing, and reputation and goodwill will be irretrievably lost. Once removed and replaced, Panola cannot step back into the role of Operator because Appellees testified that they have another entity under contract to serve as Operator. App. Ex. A (Grell testimony). Monetary security cannot restore a destroyed business or unwind an improper change in control, making a stay—not a bond—the only effective remedy.

On the other hand, Appellees are already protected against the precise harms they claimed justified injunctive relief. The Injunction restrains Panola from misusing funds, interfering with Ironman's accounts, or taking unilateral actions adverse to Ironman's operations. These provisions prevent dissipation of assets, preserve records and accounts, and maintain operational continuity—eliminating any risk of financial or operational harm during the appeal.

Further, any alleged financial injury to Appellees is purely economic and fully compensable by money damages, not irreparable harm. Appellees' complaints regarding billing disputes, alleged deficits, or accounting issues can be remedied through damages or final accounting on the merits. Texas law is clear that such economic disputes do not justify mandatory injunctive relief, much less enforcement of that relief pending appeal. *Butnaru* at 204.

Moreover, Appellees face no operational risk if Panola remains Operator during the appeal. Panola has continuously operated the Facility since November

2023 without regulatory violations, safety incidents, or service interruptions. Appellees offered no evidence of imminent harm from Panola's continued operation—only disagreement over control. A stay simply preserves existing operations while the appellate court determines whether the business court erred in awarding mandatory relief that alters the status quo.

Finally, maintaining the remaining Injunction provisions while staying Paragraph 47(i) best serves the purpose of Rule 29.3. The stay preserves the parties' rights, avoids rendering the appeal moot, and ensures that Appellees do not receive their ultimate relief—removal of Panola as Operator—before appellate review. See *In re Geomet* at 89–90.

In short, Appellees lose nothing from a stay, while denial of a stay inflicts irreversible harm on Panola and threatens this Court's jurisdiction. Equity, precedent, and Rule 29.3 all compel granting the requested stay.

V.   **Appellants, not Appellees, are likely to prevail on the merits at trial.**

The evidence presented at the hearing demonstrated that Panola and AXE were likely to succeed on their claims on final trial:

- **Declaratory Judgment:** Panola and AXE ask the business court to declare rights and obligations under the Agreements. As related to the Injunctions, it is likely that Panola will succeed on declarations that (i) Ironman, not either of the Plaintiffs, is solely responsible for funding operations under the COMA; (2) SWD had no contractual right to withhold operating funds; (3) SWD had no contractual right for capital contribution distribution reimbursements that robbed Ironman of operating funds; and (4) the October 13, 2025 termination of the MSA

23

and the October 24, 2025 attempted termination of the COMA and removal of Panola as Operator are void and unenforceable because of SWD's first breach of the parties' agreements.

- **Breach of Contract:** Panola presented sufficient evidence that Appellees have materially breached the COMA by (1) withholding and misappropriating Ironman operating funds, including over $1.4 million swept from the operating account in violation of LLCA capital distribution provisions; (2) improperly underpaying for barrels hauled by AXE and disposed of at Ironman (Barrel Underpayment); (3) refusing to fund Ironman's operations as required under COMA Article 3, which has resulted in economic coercion by starving the company of operating funds and requiring Plaintiffs to fund Ironman with its money and labor; and (4) failing to reimburse Panola's operating expenses. CR 0407; App. Ex. A (Harper testimony).

- **Unjust Enrichment:** Panola presented sufficient evidence that Appellees failed to reimbursed Panola's payment of operating expenses, insurance, repairs, and maintenance costs from its own funds, despite Ironman's obligation to fund such expenditures; and that Panola's continued operation of the Facility for the benefit of Ironman and its Members after Appellees ceased providing operating funds. CR 0407; App. Ex. A (Harper testimony).

Appellants respectfully disagree with numerous factual findings recited in the Injunction. Those findings were sharply contested at the evidentiary hearing, and the testimony and exhibits presented undermine the conclusions reflected in the Injunction. Appellants will demonstrate on appeal, once the reporter's record is filed, that several of the trial court's factual determinations are unsupported by the evidence.

**PRAYER**

For these reasons, Appellant Panola Operating LLC respectfully requests that this Court stay Paragraph 47(i) that alters the status quo and awards Appellees their ultimate relief. Appellant requests such other and further relief to which it may be entitled.

Respectfully submitted,

*/s/ Holli Pryor-Baze*
Holli Pryor-Baze
State Bar No. 24013357
*hbaze@ssbww.law*
Scott C. Skelton
State Bar No. 00784979
*sskelton@ssbww.law*

SKELTON | SLUSHER | BARNHILL |
   WATKINS | WELLS PLLC
1616 S. Chestnut St.
Lufkin, Texas 75901
Phone: 936.632.2300
Fax: 936.632.6545

***Attorney for Appellants***

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via efile.txcourts.gov, to all counsel of record, on the 19th day of December 2025.

/s/ Holli Pryor-Baze
Holli Pryor-Baze

15-25-00230-CV

## IN THE FIFTEENTH COURT OF APPEALS
## AUSTIN TEXAS

## PANOLA OPERATING, LLC AND AXE DIRECTIONAL DRILLING, LLC

## V.

## IRONMAN RECYCLING, LLC SWE EAST TEXAS, LLC AND
## GEP HAYNESVILLE II, LLC

## AFFIDAVIT FOR HOLLI PRYOR-BAZE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| ANGELINA COUNTY | § |

1. My name is Holli Pryor-Baze. I am over 21 years of age and am competent and qualified to make this Affidavit.

2. I am licensed to practice law in the State of Texas, and I am one of the attorneys of record of Appellants Panola Operating, LLC and Axe Directional Drilling, LLC in this matter. I have personal knowledge of the facts stated herein, and they are true and correct.

3. I attended the Temporary Injunction hearing held on December 11, 2025, in the Texas Business Court, Eleventh Division, Harris County, Texas, in Cause No. 25-BC11A-0085. I was present for the testimony of all witnesses and the arguments of counsel during the hearing. I personally heard the testimony summarized and referenced throughout Appellants' Emergency Motion to Stay Paragraph 47(i) of the Temporary Injunction Pending Appeal.

5. The summaries of testimony from Heith Harper and Kolbe Grell contained in the Motion accurately and fairly reflect the substance of the testimony given at the hearing. While not verbatim quotations, the summaries are true, correct, and faithful to the testimony presented under oath that I heard at the hearing.

6. At the time this affidavit is executed, the reporter's record from the Temporary Injunction hearing has been requested but is not yet available. This affidavit is submitted to verify the accuracy of the summarized testimony pending filing of the reporter's record, which Appellants will supplement once available.

Signed on December 19, 2025

Holli Pryor-Baze

SWORN TO AND SUBSCRIBED BEFORE ME, by the said Holli Pryor-Baze this the 19th day of December 2025.

Notary Public - State of Texas

TRACY L NEAL
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 09/03/27
NOTARY ID 12467009-8

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tracy Neal on behalf of Holli Virginia Pryor-Baze
Bar No. 24013357
tneal@ssbww.law
Envelope ID: 109296801
Filing Code Description: Motion for Emergency Relief
Filing Description: Appellants Emergency Motion to Stay Paragraph 47(i) of Temporary Injunction Pending Appeal
Status as of 12/19/2025 10:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Scott CSkelton | | sskelton@ssbww.law | 12/19/2025 9:50:28 AM | SENT |
| Tracy Neal | | tneal@ssbww.law | 12/19/2025 9:50:28 AM | SENT |
| Cole Thoms | 24125713 | cole.thoms@bracewell.com | 12/19/2025 9:50:28 AM | SENT |
| Holli VirginiaPryor-Baze | | hbaze@ssbww.law | 12/19/2025 9:50:28 AM | SENT |
| Richard Whiteley | | richard.whiteley@bracewell.com | 12/19/2025 9:50:28 AM | SENT |